308 N.E.2d 420 (1974)
THE BOARD OF COMMISSIONERS OF THE COUNTY OF LAKE, State of Indiana, et al., Defendants-Appellants,
v.
DEDELOW, INC., an Indiana Corporation, et al., Plaintiffs-Appellees.
No. 871A162.
Court of Appeals of Indiana, Third District.
March 19, 1974.
As Corrected on Denial of Rehearing May 8, 1974.
*421 Joseph L. Skozen, Munster, Porter R. Draper, Elsie C. Draper, Draper & Draper, Gary, Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, for defendants-appellants; Alan E. O'Connor, Gary, on brief.
Kenneth D. Reed, Hammond, for plaintiffs-appellees.
HOFFMAN, Chief Judge.
This is an appeal by defendants-appellants, The Board of Commissioners of Lake County, Indiana (Board) and Eibel & Son, Inc., (Eibel) from a permanent injunction which enjoined the Board and Eibel from performing a construction contract entered into by both parties, and from entering into any new contract pursuant to any bid proposal heretofore submitted by Eibel.
Eibel and plaintiff-appellee Dedelow, Inc. (Dedelow) were two of the five contractors to bid on "Category 2  Plumbing and Fire Protection" of the construction specifications for the Lake County Government *422 Complex. Eibel was the successful bidder. To provide for flexibility in the cost of work done under this category the Board decided to ask for several alternative bids from each bidder. These included the conversion of the aluminum plumbing fixtures called for by the specifications to more expensive stainless steel fixtures, and the elimination of plumbing fixtures altogether from the fourth floor of the jail.
The Board did not make the various alternative bids clear to the contractors, resulting in confusion in their respective bids. In Alternative No. 2-2, Eibel quoted an amount to be deducted from the base bid for converting the plumbing fixtures from stainless steel to aluminum instead of from aluminum to stainless steel as was quoted by Dedelow. Under Alternative No. 2-11, a credit figure was quoted by Eibel predicated upon the elimination of stainless steel plumbing from the fourth floor of the jailhouse, whereas Dedelow predicated its bid upon elimination of aluminum plumbing.
To rectify the confusion and thereby make the bids meaningfully competitive, the Board interpolated in order to compare the price quotations on an all-aluminum basis. After such interpolation, it was determined that Eibel was the lowest bidder, and it was subsequently awarded a contract calling for stainlesss steel plumbing fixtures, and excluding the fourth floor of the jail.
The award of the bid was made December 18, 1970, and the contract was executed approximately January 15, 1971. Dedelow filed a complaint seeking an injunction against the execution of the contract alleging that the Board unlawfully awarded the bid to Eibel even though Dedelow was the lowest and the best bidder. Furthermore, it alleged that Eibel's bid was not responsive to the bid documents but was for work not described in those documents, and that the Board invited and Eibel supplied a separate instrument used by the Board to supplement Eibel's bid. Dedelow alleged compensatory damages of $250,000 and punitive damages of $1,000,000 and sought from the trial court a temporary and permanent injunction prohibiting the Board and Eibel from entering into or performing the construction contract at issue, as well as a mandatory injunction to compel the Board to award and enter into the contract with Dedelow.
Hearing on Dedelow's request for a temporary injunction was initiated February 3, 1971. Trial upon Dedelow's motion for consolidation of the preliminary injunction and trial on the permanent injunction was finally commenced on July 1, 1971.
On July 24, 1971, the trial court entered its order granting an injunction prohibiting the performance of the contract for "Category 2  Plumbing and Fire Protection" on the Lake County Government Complex awarded to Eibel. The order was silent on the issue of mandatory injunction requested by Dedelow, and also did not grant or deny the compensatory and punitive damages sought by Dedelow. Between January 18, 1971, the filing date of the complaint, and July 24, 1971, the date of the court order, Eibel and the Board considered themselves bound by a valid contract and proceeded with the performance thereof pursuant to the agreement pending resolution of the litigation in progress. Thus, because the plumbing phase of the construction would have been delayed up to six months, costs were steadily rising, and other contractors would have been delayed by Eibel's non-performance, it proceeded with the performance of the contract requirements until ordered to stop by the July 24, 1971, trial court order.
After the injunction was granted, the Board again invited bids, to which invitation Eibel responded and Dedelow did not. The contract was then awarded to another contractor.
In perfecting this appeal, Eibel and the Board filed an assignment of errors *423 rather than a motion to correct errors, and otherwise proceeded as is proper for an appeal from an interlocutory order. This course of action is permissible if the case at bar qualified as a "public lawsuit" as defined by statute. See: IC 1971, XX-X-XX-X (Burns Code Edition).
The plaintiffs Duane Dedelow, James R. Dedelow and Peter J. Vukovich, proceeded both as officers of Dedelow, Inc. and as individuals and taxpayers of Lake County. This is proper under the Public Lawsuit Statute. See: IC 1971, XX-X-XX-X (Burns Code Edition).
IC 1971, XX-X-XX-X(b) (Burns Code Edition), provides, in pertinent part, as follows:
"`Public lawsuit' shall mean any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, and shall mean any action to declare invalid or enjoin the creation, organization or formation of any municipal corporation. * * *."
Our Supreme Court construed the above quoted section in Gariup v. Stern (1970), 254 Ind. 563, 566, 261 N.E.2d 578, to exclude bidders on public projects who question the bidding procedures from the scope of the Public Lawsuit Statute. However, on the basis that several of the plaintiffs had proceeded as individual taxpayers, and that the causes of action were inseparably commingled in their complaint, Gariup approved a trial court finding that the Public Lawsuit Statute applied to a lawsuit which included such bidders.
In the case at bar, the officers of the plaintiff corporation proceeded in the dual capacities of officers and taxpayers, and inseparably commingled the causes of action in their complaint. As a result, this cause must be considered to fall within the ambit of the Public Lawsuit Statute, which requires that appellants proceed exactly as Eibel and the Board have done.
Eibel's major dispute with the final judgment of the trial court is that it enjoins the Board from making payment for the work done by Eibel prior to the issuance of the injunction. It does so by enjoining the Board and Eibel from "either directly or indirectly, performing or giving any force or effect to the award and/or contract made and/or let to defendant Eibel & Son, Inc. * * *." (Emphasis supplied.)
Injunctions are issued by trial courts in the exercise of sound judicial discretion, and will not be reversed on appeal unless an abuse of that discretion is apparent. Local 135, etc. et al. v. Koehler d/b/a, etc. (1959), 130 Ind. App. 152, 162 N.E.2d 704. However, the remedy of injunction is limited to future acts. Standard Mercantile Co. v. Strong (1934), 207 Ind. 55, 191 N.E. 140; Cole v. Duke (1881), 79 Ind. 107. Thus, insofar as it proscribes the work performed by Eibel before its issuance, the injunction is improperly overbroad.
In the absence of any temporary injunction, then, Eibel had both the right and the duty to proceed to perform under the apparently valid contract. As it performed, the Board and the public received the benefits of its performance.
The Indiana courts have held that where benefits inure to a governmental unit under the color of an apparently valid contract, the contractor is entitled to the reasonable value of the labor and materials he has furnished if no fraud is present. Under the case law, this is true where the governmental unit acts without complying *424 with its statutory directives as to contract formation, as long as the subject-matter of the contract falls within its statutory powers. See: Bass Foundry and Machine Works v. Board of Comm'rs of Parke County et al. (1888), 115 Ind. 234, 17 N.E. 593; Heeter v. Western Boone Co. Comm. Sch. Corp. (1970), 147 Ind. App. 153, 259 N.E.2d 99 (transfer denied); Rieth-Riley, etc. v. Town of Indian Village, etc. (1966), 138 Ind. App. 341, 214 N.E.2d 208.
In the case at bar, it is unquestioned that an apparently valid contract was given by the Board to Eibel, that Eibel furnished the Board benefits under the contract, and that the contract fell within the statutory powers of the Board. Thus, the Board should be allowed to remit to Eibel the reasonable value of the materials and labor it has furnished as of the time such were furnished.
It is important to emphasize that it is not this court's holding that Eibel is entitled to the contract price for the work it completed. A rule that by proceeding to perform a contested contract a contractor could recover the entire contract price would expose governmental units to double liability in some cases. Therefore, the equitable remedy available must be limited to only the reasonable value of labor and materials furnished as of the time they were furnished. No recovery may be had for profits under the contract, or overhead attributable to the work done under the contract.
Reversed and remanded with instructions to the trial court to modify the permanent injunction as provided herein.
Reversed and remanded.
SULLIVAN, P.J. and LYBROOK, J., concur.